UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MATHEW LEE WILLIAMS, | Case No. 3:16-cv-00505-MMD-CBC |
| Petitioner, | ORDER |
| v. | |
| RENEE BAKER, *et al.*, | |
| Respondents. | |

**I.     INTRODUCTION**

This case is a *pro se* petition for a writ of habeas corpus, under 28 U.S.C. § 2254, by Mathew Lee Williams, an individual incarcerated in a Nevada prison. The case is before the Court for adjudication of the merits of the claims remaining in Williams's amended habeas petition. The Court will deny Williams's habeas petition, will deny him a certificate of appealability, and will direct the Clerk of the Court to enter judgment accordingly.

**II.     BACKGROUND**

Williams was convicted on November 29, 2012, in Nevada's Second Judicial District Court, upon a guilty plea, of lewdness with a child under the age of fourteen years, and he was sentenced to life in prison with eligibility for parole after ten years. (ECF No. 39 (Amended Petition for Writ of Habeas Corpus); ECF No. 15-24 (Judgment, Respondents' Ex. 24).)

Williams appealed from his conviction, and the Nevada Supreme Court affirmed on September 18, 2013. (ECF No. 16-20 (Appellant's Opening Brief, Respondents' Ex. 51); ECF No. 16-26 (Order of Affirmance, Respondents' Ex. 57).)

///

1    Williams then filed a petition for writ of habeas corpus in the state district court,

2    and that court denied the petition on November 12, 2015. (ECF No. 17 (Petition for Writ

3    of Habeas Corpus (Post-Conviction), Respondents' Ex. 61); ECF No. 17-13 (Order of

4    State District Court, Respondents' Ex. 74).) Williams appealed the denial of his petition,

5    and the Nevada Supreme Court affirmed on July 13, 2016. (ECF No. 17-21 (Appellant's

6    Opening Brief, Respondents' Ex. 82); ECF No. 17-28 (Order of Affirmance, Respondents'

7    Ex. 89).)

8         Williams initiated this federal habeas corpus action on August 29, 2016. (ECF No.

9    6 (Petition for Writ of Habeas Corpus).)

10        On January 11, 2017, Respondents filed a motion to dismiss Williams's original

11   petition (ECF No. 14). Williams, in turn, filed a motion for stay (ECF No. 21), in which he

12   requested that this case be stayed while he returns to state court to exhaust any

13   unexhausted claims. The Court ruled on those motions on April 18, 2017. (ECF No. 24

14   (Order entered April 18, 2017).) The Court dismissed a claim based on alleged ineffective

15   assistance of Williams's state post-conviction counsel, and, in all other respects, denied

16   the motion to dismiss. (*See id.*) The Court denied Williams's motion for stay, as moot,

17   finding that there were no viable claims yet to be exhausted in state court. (*See id.*)

18   Williams filed a motion for reconsideration, and the Court denied that motion. (ECF No.

19   38.)

20        Williams then filed a motion for leave to amend, and another motion for a stay.

21   (ECF Nos. 31, 32.) The Court granted the motion for leave to amend, and denied the

22   motion for stay, without prejudice, determining that it was premature. (ECF No. 38.)

23        Williams then filed his amended petition—the operative petition in this case—on

24   June 30, 2017. (ECF No. 39.) The Court reads the amended petition to contain the

25   following grounds for relief:

26        1.    Williams was denied effective assistance of trial counsel, in violation
           of his federal constitutional rights, because trial counsel failed to adequately
27         investigate the case before he pled guilty.

28

1    2.    Williams's federal constitutional rights were violated because the failure to consider his drug addiction in his sentencing amounts to cruel and unusual punishment.

2

3    3.    Williams's federal and state constitutional rights were violated because the statute under which he was sentenced, and his sentence, violate the constitutional prohibition of cruel and unusual punishment.

4

5    4.    Williams was denied effective assistance of trial counsel, in violation of his federal constitutional rights, because trial counsel failed to adequately investigate the case before he pled guilty.

6

7    5.    Williams was denied effective assistance of counsel on his direct appeal, in violation of his federal constitutional rights, because of the claims that his appellate counsel did and did not assert.

8

9    6.    Williams was denied effective assistance of trial counsel, in violation of his federal constitutional rights, because trial counsel misinformed him about the strength of the State's case, and failed to adequately investigate the case, before he pled guilty.

10

11    7.    Williams was denied effective assistance of trial counsel, in violation of his federal constitutional rights, because trial counsel failed to present sufficient mitigating evidence at his sentencing.

12

13    8.    Williams's federal constitutional rights were violated because his guilty plea was not knowing, intelligent, and voluntary, as he did not understand the plea agreement, and he was misled about the strength of the State's case.

14

15

16    9.    Williams was denied effective assistance of counsel on his direct appeal, in violation of his federal constitutional rights, because his appellate counsel did not adequately investigate his case and did not assert meritorious claims.

17

18

19    (ECF No. 39 (Amended Petition for Writ of Habeas Corpus).)

20    On November 13, 2017, Respondents filed a motion to dismiss Williams's

21    amended petition. (ECF No. 51.) In that motion, Respondents asserted that Grounds 4,

22    5, 7, 8 and 9 are unexhausted in state court, and that part of Ground 3 is not cognizable

23    in this federal habeas corpus action. (*See id.*) As part of his response, Williams filed

24    another motion for stay (ECF No. 52). The Court ruled on those motions on July 17, 2018.

25    (ECF No. 63.) The Court granted the motion to dismiss in part and denied it in part, and

26    dismissed Grounds 5 and 9, and parts of Grounds 3 and 8; the Court denied Williams's

27    motion for stay. (*See id.*)

28    ///

3

1       Respondents filed an answer (ECF No. 66), responding to the remaining claims in

2 Williams's amended petition, on October 15, 2018, and Williams filed a reply (ECF No.

3 71) on December 10, 2018.

4 **III.**     **LEGAL STANDARD**

5       28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in

6 habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

7
        An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted with
8         respect to any claim that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim --
9

10
        (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined
by the Supreme Court of the United States; or
11

12
        (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.
13

14 28 U.S.C. § 2254(d).

15       A state court decision is contrary to clearly established Supreme Court precedent,

16 within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts

17 the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts

18 a set of facts that are materially indistinguishable from a decision of [the Supreme Court]

19 and nevertheless arrives at a result different from [the Supreme Court's] precedent."

20 *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362,

21 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

22       A state court decision is an unreasonable application of clearly established

23 Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court

24 identifies the correct governing legal principle from [the Supreme Court's] decisions but

25 unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S.

26 at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires

27 the state court decision to be more than incorrect or erroneous; the state court's

28 ///

1  application of clearly established law must be objectively unreasonable. *Id.* (quoting

2  *Williams*, 529 U.S. at 409).

3  The Supreme Court has instructed that "[a] state court's determination that a claim

4  lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

5  on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

6  (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court

7  has stated "that even a strong case for relief does not mean the state court's contrary

8  conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen*

9  *v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and

10  "highly deferential standard for evaluating state-court rulings, which demands that state-

11  court decisions be given the benefit of the doubt" (internal quotation marks and citations

12  omitted)).

13  **IV.    DISCUSSION**

14  **A.    Grounds 1, 4 and 6**

15  In Grounds 1, 4 and 6, Williams claims that he was denied effective assistance of

16  counsel and due process of law, in violation of his federal constitutional rights, because

17  his trial counsel failed to adequately investigate the case, failed to inform him of the true

18  strength of the State's case, and failed to develop a defense. (ECF No. 39 at 3-4, 18-22,

19  25-26 (Amended Petition at 3-4, 9-10, 13-14).)

20  The Court will discuss Grounds 1 and 6 collectively. In these two grounds, Williams

21  asserts that his trial counsel was ineffective and he was denied due process of law

22  because his counsel did not investigate his case, because he was not informed of the

23  true strength of the State's case, and because his counsel did not develop a defense.

24  (*See id.* at 3, 13.) However, Williams makes no allegations as to what investigation he

25  believes his counsel should have done, what that investigation would have uncovered,

26  what weaknesses in the State's case should have been explained to him, or what kind of

27  defense could have been developed. (*See id.*)

28  ///

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Williams asserted claims like those in Grounds 1 and 6 in his state habeas action. (ECF No. 17 at 7 (Petition for Writ of Habeas Corpus, Ex. 61 at 6).) The state district court dismissed those claims, stating:

> Petitioner alleges that he was misled into pleading guilty . . . and that no investigation was conducted. These claims require Petitioner to be more specific. [Footnote: *Nika v. State*, 124 Nev. 1272, 198 P.3d 839 (2008); *Hargrove v. State*, 100 Nev. 498, 686 P.2d 222, 225 (1984).] First, Petitioner simply states that he was misled into pleading guilty, but never explains what he means by this. Without more, this is a bare allegation, not supported by any facts, and does not entitle Petitioner to any relief.

* * *

[T]o entitle Petitioner to a hearing on the lack of an investigation, a post-conviction petition must set forth "a factual background, names of witnesses or other sources of evidence demonstrating . . . entitlement to relief. [Footnote: *Id.*] In other words, Petitioner is required to identify the omitted witnesses and give a summary of their proposed testimony. Here, Petitioner does nothing of the kind. Like his other claims for ineffective assistance of counsel, Petitioner merely alleges a deficient performance without explaining what specifically was wrong, or how the outcome of his case would have been different.

(ECF No. 17-3 at 4 (Order, Ex. 74 at 3).) On the appeal in that case, the Nevada Supreme

Court affirmed, stating:

Williams argues that trial counsel provided ineffective assistance in inducing him to accept a plea agreement by misleading him regarding the amount of evidence against him. The district court found that Williams failed to articulate specific facts supporting this claim. As Williams did not identify any particular misrepresentations and proffers only this general allegation of deficiency, we agree with the district court and conclude that this claim fails, as a bare allegation unsupported by specific factual allegations does not warrant relief. *See Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).

Williams argues that trial counsel failed to properly investigate his case. The district court found that Williams failed to support this claim with specific factual allegations and concluded that he had failed to show how additional investigation would have yielded a different outcome. As Williams has failed to address what evidence would have been uncovered by further investigation and we cannot discern from the record what might have been revealed, we conclude that Williams has failed to establish a reasonable probability of a different outcome and that this claim fails. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (holding that appellant failed to show prejudice under *Strickland* where he failed to show what evidence a more thorough investigation would have yielded).

* * *

Williams argues that his right to due process was violated because he was not shown the evidence against him and because the evidence was insufficient to establish his guilt beyond a reasonable doubt. The district court found that Williams freely and voluntarily entered a plea of guilty and thereby relieved the State of its duty to produce evidence. As Williams expressly waived his rights to be confronted with the evidence against him and to require the State to prove his guilt beyond a reasonable doubt, we conclude that he cannot assert a due process violation regarding the State's evidence and that this claim fails. [Footnote: Additionally, we conclude that the district court did not err in denying an evidentiary hearing, as a petitioner is only entitled to an evidentiary hearing if his claims are supported with specific factual allegations that would entitle him to relief if true. *Means v. State*, 120 Nev. 1001, 1016, 103 P.3d 25, 35 (2004).]

(ECF No. 17-28 at 3-5 (Order of Affirmance, Ex. 89 at 2-4).) That ruling was reasonable. Williams's claims in Grounds 1 and 6 are conclusory. The Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, and it was not based on an unreasonable determination of the facts in light of the evidence. The Court will deny relief on Grounds 1 and 6.

In Ground 4, as well, Williams claims that he was denied effective assistance of trial counsel, in violation of his federal constitutional rights, because trial counsel failed to adequately investigate the case. (ECF No. 39 at 18-22 (Amended Petition at 9-10).) Williams adds some specificity not included in Grounds 1 and 6, and not presented in state court; Williams alleges that his trial counsel was ineffective for not investigating: his whereabouts at the time of the crime; his drug and alcohol use; his mental health; drug and alcohol use by witnesses and the victim; inconsistent statements of witnesses; coerced statements of witnesses; possible impeachment of witnesses; the lack of "a rape kit," or DNA testing of the victim; inconsistent statements of the victim; and other possible impeachment of the witnesses and the victim and her family. (*See id.*)

In the July 17, 2018, order resolving Respondents' motion to dismiss, the Court found Ground 4 subject to the anticipatory procedural default doctrine, that is, that the claim would be procedurally barred if now presented in this form in state court, such that it is procedurally defaulted in this case unless Williams can overcome the procedural default by a showing of cause and prejudice. (ECF No. 63 at 4-7.) The Court noted that Williams might be able to make a showing of cause and prejudice to overcome the procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012), by showing ineffective assistance of his state habeas counsel, but the Court deferred consideration of that issue until the Respondents filed an answer and Williams a reply. (*See id.*)

The Court now determines that Williams's post-conviction counsel was not ineffective for not asserting this claim, and that, at any rate, the claim is not substantial, and is without merit, because Williams does not show that he was prejudiced. There is

1   no showing of a reasonable probability that Williams would not have pled guilty had the

2   suggested investigation been done.

3         In exchange for his plea of guilty to the crime of lewdness with a child under the

4   age of fourteen, the State agreed not to pursue other charges against Williams. (ECF No.

5   15-17 (Guilty Plea Memorandum, Ex. 17).) The record reveals that other potential charges

6   against Williams could have been substantially more serious and could have resulted in

7   a longer prison sentence. The following is the statement of facts presented to the Nevada

8   Supreme Court by Williams on the appeal in his state habeas action:

9               On October 18, 2011[,] Reno Police Department officers received a
      report from [Willow Springs Center] regarding the sexual assault of a
10      thirteen (13) year old girl. The victim had run away from Kids Cottage and
      was hanging around down by the river. Williams told the victim that she
11      could stay with his cousin and tell the victim's mother that she was in Reno
      but not tell her where she was. The victim knew Williams because he was
12      friends with her older brother and older sister's ex-boyfriend. The victim later
      went to a motel room to do drugs with her friends, "Short Stack" and "J.D."
13      The victim claimed she was lying on the floor when Williams put a large foul
      smelling object into her mouth, where she was unable to talk or scream and
14      then ripped off her shorts and raped her. The victim tried to kick Williams
      and push him off of her but he would hit her whenever she resisted. After
15      Williams was done, "Short Stack" raped her from behind. Her friend J.D.
      came in and asked if she was okay. Then Williams sent J.D. and Short Stack
16      out to get cigarettes and raped the victim again. Williams stopped when
      Short Stack warned him there were cops around.
17

18              The victim did not tell anyone because she was afraid Williams would
      kill her, since during the rape, Williams hit her in the back of the head with
19      a gun and told her he would shoot her, put her in a trash bag, and roll her
      down a hill where nobody would know. The victim said she was bleeding
20      and had stuff coming out of her after the rape, saving her underwear from
      that day in one of her suitcases.

21              On December 8, 2011, the victim was interviewed by detectives. The
      victim agreed with the initial report and elaborated.
22

23              On December 9, 2011, J.D. was located and recalled Williams having
      sexual intercourse with the victim on the motel floor.

24              On December 10, 2011, Williams was located and confirmed having
      sexual intercourse with the victim on the motel floor. Williams admitted that
25      he was under the influence and did not really know if the victim consented
      or not.
26

27              In Williams' statement to the Department of Parole and Probation,
      Williams claimed his innocence, felt coaxed by the detectives into admitting
28      to having sexual intercourse with the victim. Williams also claimed his

                                          9

1        lawyer told him to admit to having sex with the victim because that was what
      the judge wanted to hear.

2  (ECF No. 17-21 at 7-9 (Ex. 82 at 2-4)); *see also* ECF No. 69 (Presentence Investigation

3  Report) (filed under seal).) Given the allegations made by the victim, and the statement

4  of the witness, as well as the statement Williams made, it is clear that Williams received

5  significant benefit from the plea agreement.

6        Meanwhile, Williams's new, self-serving assertion that he was not at the scene of

7  the crime is completely unsupported by any proffered evidence, and it is in conflict with

8  statements made by the victim, a witness, and Williams. And, moreover, an investigation

9  by trial counsel was not necessary for Williams to learn where he was at the time of the

10  crime, nor for Williams to learn any of the other information he claims an investigation

11  would have uncovered. These are matters within his knowledge. Trial counsel's alleged

12  inadequate investigation did not deprive Williams of information regarding these matters

13  when he agreed to plead guilty.

14        Williams makes no showing of a reasonable probability that, but for counsel's

15  alleged inadequate investigation, he would not have pled guilty and would have insisted

16  on going to trial. *See Hill*, 474 U.S. at 59. Williams has not shown this claim of ineffective

17  assistance of counsel to be substantial, and he has not shown that his post-conviction

18  counsel was ineffective for failing to raise it. Ground 4 will be denied on the ground that it

19  is procedurally defaulted.

20        **B.**    **Ground 2**

21        In Ground 2, Williams claims that his federal constitutional rights were violated

22  because the failure to consider his drug addiction in his sentencing amounts to cruel and

23  unusual punishment. (ECF No. 39 at 5-6.)

24        This claim will be denied as it is patently meritless. Williams's history of substance

25  abuse—including his belief that he was addicted to methamphetamine—was before the

26  sentencing court. (ECF No. 69 (Presentence Investigation Report) (filed under seal); *see*

27  *also* ECF No. 15-23 at 11-14 (Transcript of Sentencing, Ex. 23 at 10-13) ("The Court has

28  considered the defendant's characteristics.").) Furthermore, Williams was sentenced to

1 the mandatory minimum sentence required by statute; Williams cannot show that any

2 further consideration of his drug addiction would have influenced his sentencing.

3 **C.    Ground 3**

4 In Ground 3, Williams claims that his federal and state constitutional rights were

5 violated because the statute under which he was sentenced, and his sentence, violate

6 the constitutional prohibition of cruel and unusual punishment. (ECF No. 39 at 7-17.) The

7 statute under which Williams was sentenced, NRS § 201.230(2), mandated, and Williams

8 was sentenced to, a sentence of life in prison with possibility of parole after ten years.

9 *See* NRS § 201.230(2).

10 In the ruling on Respondents' motion to dismiss, the Court dismissed Ground 3 to

11 the extent Ground 3 is based on violation of Williams's rights under the Nevada

12 constitution. (ECF No. 63.)

13 On his direct appeal, Williams asserted the claim that his sentencing under NRS §

14 201.230(2) violated his federal constitutional right to be free of cruel and unusual

15 punishment, and the Nevada Supreme Court ruled as follows:

16 NRS 201.230(2) imposes a mandatory minimum sentence of life

17 imprisonment with the possibility of parole for a first offense of lewdness with a child. Williams argues that this statute unconstitutionally violates substantive due process because the punishment for this crime was

18 arbitrarily increased by the Legislature over a ten-year period, effectively decreasing the district court's sentencing discretion and contributing to

19 prison overcrowding. Williams further argues that the statute violates the constitutional proscription against cruel and unusual punishment because it

20 imposes a sentence that is disproportionate to the offense, is greater than necessary to meet society's interests, and is overly severe when compared

21 with the sentences imposed by other jurisdictions.

22 Because Williams has not demonstrated that the Legislature acted arbitrarily by increasing the punishment for lewdness with a child, *see*

23 *Goudge v. State*, [128 Nev. 548, 554], 287 P.3d 301, 304 (2012) ("[T]he Legislature is empowered to define crimes and determine punishments, as

24 long as it does so within constitutional limits. Moreover, it is within the Legislature's power to completely remove any judicial discretion to

25 determine a criminal penalty by creating mandatory sentencing schemes." (internal citation and quotation marks omitted)), nor supported his cruel-

26 and-unusual-punishment argument with tangible evidence, he has not made a clear showing that the statute is invalid.

27

28

(ECF No. 16-26 at 2-3 (Order of Affirmance, Ex. 57 at 1-2)).)

Under the Eighth Amendment to the United States Constitution, cruel and unusual punishments are not to be inflicted. U.S. Const. amend. VIII. A sentence constitutes cruel and unusual punishment if it is "grossly disproportionate" to the crimes committed. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (upholding two consecutive twenty-five-years-to-life sentences for petty theft, and ruling that California court's denial of relief on claim was not contrary to nor an unreasonable application of federal law); *see also Ewing v. California*, 538 U.S. 11, 28-31 (2003) (upholding sentence of twenty five years to life in prison for grand theft under California's three strikes law); *Harmelin v. Michigan*, 501 U.S. 957, 961 (1991) (upholding mandatory sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine).

The Nevada Supreme Court reasonably concluded that Williams's sentence is not disproportional to the crime of lewdness with a child under the age of fourteen. *See Harmelin*, 501 U.S. at 1004 ("[I]ntrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."). The Nevada Supreme Court's rejection of Williams's cruel and unusual punishment claim was neither contrary to nor an unreasonable application of clearly established federal law. The Court will deny relief on Ground 3.

### D.    Ground 7

In Ground 7, Williams claims he was denied effective assistance of counsel, in violation of his federal constitutional rights, because his trial counsel failed to present sufficient mitigating evidence at his sentencing. (ECF No. 39 at 27-29 (Amended Petition at 15-16).) More specifically, Williams claims that his counsel should have presented evidence of his drug abuse and addiction, his mental illness, and the abuse, neglect and abandonment that he suffered in his childhood. (*See id.*)

In the July 17, 2018, order, the Court found that Ground 7 would be procedurally barred if now presented in state court, such that it is procedurally defaulted in this case

1 unless Williams can overcome the procedural default by a showing of cause and

2 prejudice. (ECF No. 63 at 4-6, 9.) The Court noted that Williams might be able to

3 overcome the procedural default, under *Martinez*, by showing ineffective assistance of

4 his state habeas counsel, but deferred consideration of that issue. (*See id.*)

5 This claim of ineffective assistance of counsel is insubstantial and meritless.

6 Williams does not indicate what mitigating evidence regarding his drug use, mental illness

7 or difficult upbringing his trial counsel should have presented. And, at any rate, the

8 sentencing court did have information regarding Williams' drug use and addiction, and his

9 difficult childhood, Williams's counsel argued those were factors the court should take

10 into consideration, and the court did apparently consider them. (ECF No. 69 (Presentence

11 Investigation Report) (filed under seal); ECF No. 15-23, at 4-5, 11-14 (Transcript of

12 Sentencing, Ex. 23 at 3-4, 10-13).) Moreover, Williams was sentenced to the mandatory

13 minimum sentence required by statute, and, therefore, cannot show that presentation of

14 any further evidence regarding these matters would have influenced his sentencing.

15 Williams makes no showing of a reasonable probability that, but for counsel's

16 alleged inadequate mitigation presentation, the outcome of his sentencing would have

17 been different. Therefore, Williams does not show this claim of ineffective assistance of

18 counsel to be substantial and he does not show that his post-conviction counsel was

19 ineffective for failing to raise it. Ground 7 will be denied on the ground that it is procedurally

20 defaulted.

21 **E.    Ground 8**

22 In Ground 8 Williams claims that his federal constitutional rights were violated

23 because his guilty plea was not knowing, intelligent, and voluntary, as he did not

24 understand the plea agreement, and was misled about the strength of the State's case.

25 (ECF No. 39 at 30-32 (Amended Petition at 17-18).)

26 In the ruling on Respondents' motion to dismiss, the Court dismissed Ground 8 to

27 the extent Williams claims that his guilty plea was not knowing, intelligent, and voluntary,

28 because he did not understand the plea agreement. (ECF No. 63.)

1    The Court finds that the Nevada Supreme Court reasonably rejected the claim that

2    Williams's guilty plea was not knowing, intelligent, and voluntary, because he was misled

3    about the strength of the State's case.

4    The federal constitutional guarantee of due process of law requires that a guilty

5    plea be knowing, intelligent and voluntary. *See Brady v. United States*, 397 U.S. 742, 748

6    (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. Delgado-Ramos*,

7    635 F.3d 1237, 1239 (9th Cir. 2011). "The voluntariness of [a petitioner's] guilty plea can

8    be determined only by considering all of the relevant circumstances surrounding it."

9    *Brady*, 397 U.S. at 749. Those circumstances include "the subjective state of mind of the

10   defendant ...." *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986). Addressing the "standard

11   as to the voluntariness of guilty pleas," the Supreme Court has stated:

12   
13   > (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).
14   
15   

16   *Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir.

17   1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)); *see also North Carolina v.*

18   *Alford*, 400 U.S. 25, 31 (1970) (noting that the "longstanding test for determining the

19   validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice

20   among the alternative courses of action open to the defendant.'"). In *Blackledge v. Allison*,

21   431 U.S. 63 (1977), the Supreme Court addressed the evidentiary weight of the record of

22   a plea proceeding when the plea is subsequently subject to a collateral challenge. While

23   noting that the defendant's representations at the time of his guilty plea are not "invariably

24   insurmountable" when challenging the voluntariness of his plea, the Court stated that,

25   nonetheless, the defendant's representations, as well as any findings made by the judge

26   accepting the plea, "constitute a formidable barrier in any subsequent collateral

27   proceedings" and that "[s]olemn declarations in open court carry a strong presumption of

28   ///

1  verity." *Blackledge*, 431 U.S. at 74; *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir.

2  2012); *Little v. Crawford*, 449 F.3d 1075, 1081 (9th Cir. 2006).

3      Williams has not identified any weakness of the State's case that he did not know

4  about when he pled guilty. On the other hand, during the plea colloquy, Williams

5  acknowledged that he understood the elements of the crime and admitted that he

6  committed the crime. (ECF No. 15-16 at 8-10 (Transcript of Arraignment, Ex. 16 at 7-9).)

7  Williams further acknowledged that he read the plea agreement, discussed it with his

8  counsel, and understood it. (*Id.* at 8-9). In the plea agreement, Williams agreed that he

9  understood what the State would have to prove to convict him, and he specifically

10  admitted "that the State possesses sufficient evidence which would result in my

11  conviction." (ECF No. 15-17 at 3 (Guilty Plea Memorandum, Ex. 17 at 2).)

12      The Nevada Supreme Court's denial of relief on this claim was not contrary to, or

13  an unreasonable application of, clearly established federal law. The Court will deny relief

14  on Ground 8.

15  **V.  CERTIFICATE OF APPEALABILITY**

16      The standard for the issuance of a certificate of appealability requires a "substantial

17  showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court

18  has interpreted 28 U.S.C. § 2253(c) as follows:

19          Where a district court has rejected the constitutional claims on the
          merits, the showing required to satisfy § 2253(c) is straightforward: The
20          petitioner must demonstrate that reasonable jurists would find the district
          court's assessment of the constitutional claims debatable or wrong.
21

22  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074,

23  1077-79 (9th Cir. 2000).

24      Applying this standard, the Court finds that a certificate of appealability is

25  unwarranted in this case. The Court will deny Williams a certificate of appealability.

26  **VI.  CONCLUSION**

27      It is therefore ordered that the Amended Petition for Writ of Habeas Corpus (ECF

28  No. 39) is denied.

1     It is further ordered that Petitioner is denied a certificate of appealability.

2     It is further ordered that, pursuant to Federal Rule of Civil Procedure 25(d), the

3 Clerk of Court is directed to substitute Renee Baker for William Gittere as the respondent

4 warden on the docket for this case.

5     It is further ordered that the Clerk of the Court is directed to enter judgment

6 accordingly and close this case.

7     DATED THIS 24th day of June 2019.

8

9     _____
      MIRANDA M. DU
10    UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28